## PRYSI *v.* KINSEY.

(Decided December 18, 1930.)

*Messrs. Bowers & Bowers,* for plaintiff.

*Mr. J. F. Stephenson* and *Mr. J. C. Mitchell,* for defendant.

SHERICK, J.   The defendant, Charles Kinsey, appeals this cause from the court of common pleas of Tuscarawas county, and the matter is presented in this court upon the transcript of the testimony offered in that court and certain additional testimony herein produced.

The plaintiff lessor, John Prysi, seeks to enjoin

his tenant from harvesting an away-going crop; and the tenant asks similar relief against his landlord, in that the tenant seeks under two defenses or theories that the lessor be enjoined from interfering with him in the reaping of that which he has sown: First, that he is entitled to emblements by virtue of local custom; and, second, that the lessor is estopped by his conduct and silence.

All that is needful of the facts for an understanding and determination of the first issue presented may be embodied in two questions. The first is whether the appellant as lessee of farming lands under a written lease for a term of five years, beginning April 1, 1925, and ending April 1, 1930, at a fixed annual money rental which had been fully paid, the lease being silent as to the tenant's right to away-going crops, may enter upon the land after the expiration of the term and after surrender of the premises and garner a crop of wheat sowed by him in the fall of 1929. And the question incident to the major one is: May this contract be varied by parol testimony, in that it may be shown that the parties at time of contract knew or should have known that it was a long-established custom in the community that in such a tenancy the lessee was allowed these emblements? The appellant claims to have possessed this knowledge and to have contracted with this custom in mind. The appellee denies the existence of any such custom, and any knowledge thereof if such did exist.

The appellant very frankly admits that the rule prevailing in a majority of the states of the Union is adverse to his position, but contends that in this state the rule is otherwise, where local custom and

usage so prescribe. And it is further conceded that in parts of this state where such usage and custom do not prevail Ohio is found in the majority column. In other words, it is now claimed for the tenant that this community or vicinity has for a long period of time exercised a judicial home rule, in that the custom therein abrogates the general doctrine that emblements cannot be taken after the expiration of a lease for a definite term of years.

The appellant cites as authority for his position Tiedeman on Real Property (3d Ed.), page 71, Section 59, and authorities therein noted, and the case of *Foster* v. *Robinson,* 6 Ohio St., 90, decided in 1856. And we find that in that case it was held:

"In case of a lease of farming lands, whether by deed or in parol, from the first of April in one year to the first of April in the next year, the contract of lease being silent in respect to an *away-going crop,* and containing nothing, either expressly or by fair implication, to negative a customary right of the tenant to such crop, a general custom, established in the place where the parties reside and the demised premises are situate, giving to the tenant the right to the *away-going crop,* annexes such right, by way of incident, to the contract of lease."

The decision in above case seems to have been based upon the reasoning advanced in an English case, *Wigglesworth* v. *Dallison,* Douglass, 201, 99 Eng. Rep. R., 132, which our Supreme Court quotes with approval. It was therein said:

"We have thought of this case, and we are all of the opinion that the custom is good. It is just; for he who sows ought to reap, and it is for the benefit and encouragement of agriculture. It is, indeed,

against the general rule of law concerning emblements, which are not allowed to tenants who know when their term is to cease, because it is held to be their fault or folly to have sown, when they knew that their interest would expire before they could reap. But the custom of a particular place may rectify what otherwise would be imprudence or folly. The lease being by deed does not vary the case. The custom does not alter or contradict the agreement in the case; it only superadds a right which is consequential to the taking, as a heriot may be due by custom, although not mentioned in the grant or lease.''

It does not appear that the *Foster case, supra,* has ever been reconsidered, reversed, or modified; and this court feels itself compelled to follow and hold that decision as the law of this case, irrespective of what may be the opinion of this court as to its soundness when applied to the situation developed in the case at bar.

It therefore remains for this court to carefully consider and weigh the evidence produced by the parties on the question of the custom of the vicinity in which the land lay and the parties resided. This we have done; and we find that the appellant is supported by ten reputable witnesses to the effect that there was and is such a general custom in this locality. On the other hand, we find that the plaintiff is supported by four witnesses, worthy of belief, that there is no such custom. We further find that the number of witnesses on each side who are related to the parties for whom they testify are equal in number, and that the testimony of the defendant is a bit more plausible than that of the plaintiff, when considered as a whole, and in view thereof and what

may be hereinafter said pertaining to the question of estoppel we are inclined to the opinion that the evidence preponderates in favor of the defendant. A further fact leads us to this conclusion, that being the recollection by the defendant and his witnesses of various instances of a tenant's returning to the vicinity after term and carrying off away-going crops. In fact, one written lease is in evidence, where emblements were taken after term, the lease being silent thereon.

We find the general rule, and the exception thereto herein contended for, considered and digested in 13 Ohio Jurisprudence, page 13, Section 10, also in 24 Cyc., 1069, and 8 Ruling Case Law, page 362, Section 8.

The plaintiff advances a general rule that even if this be the law it cannot apply in this case, for the reason that he knew of no such custom and hence did not contract with the custom in view. If such were true, and the burden was on the tenant to prove the landlord's knowledge, the exception to the rule would in nearly every instance be incapable of proof. We note from the *Foster case, supra,* that the Supreme Court approved of a charge therein which did not make the tenant's right of recovery dependent upon the landlord's knowledge of the custom. The court considered and approved *Van Ness* v. *Pacard,* 27 U. S. (2 Pet.), 137, 7 L. Ed., 374, which held that "every person, under such circumstances, is supposed to be conusant of this custom, and to contract with a tacit reference to it." We are therefore of opinion that this general rule contended for by the plaintiff does not apply in a suit of this kind, but that custom in this instance amounts to a rule of law and

the landlord's ignorance thereof is no excuse. This rule seems harsh, but, as previously stated, we are constrained to follow what appears to us to be the holding in the *Foster case*.

The evidence further shows that no wheat was sown on these premises in the fall of 1924. And it is affirmed by the defendant lessee, and denied by the plaintiff, that the lessee was to have five crops of wheat off of the land. The contract contains a special provision that the tenant was to keep the property well seeded. And it appears from the plaintiff's testimony that he had actual knowledge in the fall of 1929 that the ground was being plowed and was to be seeded to wheat, which he knew could not be harvested until after the expiration of the term of lease, and that he made no objection thereto to the defendant, but that he was concerned and made inquiry of the tenant's farm hand whether the wheat ground had been seeded to grass, which had been done.

It further appears that at or about the time of the plowing the plaintiff made inquiry of his attorney as to his right to enjoin the seeding of wheat, and was advised that such an action was not maintainable until April 1, 1930. From which it is clear that he was advised as to his rights and that his intention then formed was to do that which he thereafter did, that is, remain silent and permit the defendant to expend his labor and substance and improve the land by its cultivation rather than let it lie fallow to its detriment; and it appeals to this court that it is an implied covenant of all farm contracts that the tenant will cultivate the ground according to the generally accepted theory of what is considered good husbandry. And we recognize, as did the plaintiff, that

it is good husbandry to sow grass with wheat or other small grain. And it probably was in the mind of the plaintiff to secure a proper seeding and to also reap the cover crop of wheat which he had not sown.

In view of these facts, it is the opinion of this court that in equity and good conscience the plaintiff should not have stood silently by and let those things be done to his land without remonstrance, and that he expected all the while to reap the benefits thereof; and we believe it pertinent to repeat that he who seeks equity should do equity, and that plaintiff should not now be heard to assert that which seems to us unconscionable.

It is the judgment of this court that a decree be entered in favor of the defendant in accordance with the prayer of the amended answer and cross-petition, and judgment is entered against the plaintiff for costs.

*Decree for defendant.*

LEMERT, P. J., and MONTGOMERY, J., concur.